UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA AND ITS
LOCAL 897,

        Plaintiff,

   v.

FORD MOTOR COMPANY,

        Defendant.

23-CV-793-LJV
DECISION & ORDER

---

    Before this Court is a motion by the defendant, Ford Motor Company ("Ford"), to compel arbitration, *see* Docket Item 14, which the plaintiff, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and its Local 897 ("UAW"), opposes, *see* Docket Item 15. The dispute arises from a series of events in 2020 and arbitration proceedings that took place afterwards.

    On August 21, 2020, Ford fired a pipefitter—Robert Suszek—for harassing other employees. Docket Item 1-3 at 3.[1] Suszek's union, UAW, then filed a grievance arguing that the termination was wrongful. Docket Item 1 at ¶ 9. On December 2, 2022, an arbitrator found that Ford did not have just cause to terminate Suszek's employment because termination was disproportionate to the penalty given to another

---

[1] Page numbers in docket citations refer to ECF pagination.

harasser.  *See id.* at ¶ 14; Docket Item 1-3 at 32.  The arbitrator ordered conditional reinstatement without back pay.  Docket Item 1-3 at 33-35.

According to UAW, Ford "reinstated [Suszek] on paper" but then fired him again within a week—this time for lying during the disciplinary investigation that led to the first firing.  Docket Item 1 at ¶¶ 20-21.  On August 7, 2023, UAW filed a complaint in this Court, asking for confirmation and enforcement of the arbitration award under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  Docket Item 1.  That statute "provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards."  *Loc. 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998).  UAW also asked for "make[-]whole relief. . . with interest . . . for [Ford's] failure and refusal to act in accordance with the [a]rbitration [o]pinion and [a]ward."  Docket Item 1 at 5.

On October 20, 2023, Ford moved to compel arbitration of UAW's requests in this action.  *See* Docket Item 14.  After UAW responded, *see* Docket Item 15, and Ford replied, *see* Docket Item 16, this Court heard oral argument, *see* Docket Item 20.  Both sides then filed supplemental briefs.  *See* Docket Items 21 and 22.

Having considered the parties' briefing and arguments, this Court now grants Ford's motion in part and denies it in part.  More specifically, the Court denies Ford's motion insofar as it seeks to arbitrate UAW's request that the Court confirm the arbitration award—something this Court has statutory authority to do.  *See Parker Meridien Hotel*, 145 F.3d at 88.  But it grants Ford's motion to arbitrate UAW's requests for enforcement and make-whole relief because it is arguable that "there is . . . [a] material factual difference between the new dispute and the one decided in the prior

2

arbitration that would justify an arbitrator's reaching a different conclusion."  *See Int'l Chem. Workers Union (AFL-CIO), Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 46 (2d Cir. 1985) (citation omitted).

## **BACKGROUND**

In the summer of 2020, Suszek's coworker reported him for harassment.  Docket Item 1-3 at 4.  Ford ultimately fired Suszek.  *Id.* at 3.  The Collective Bargaining Agreement ("CBA") between Ford and UAW provides a four-part grievance process that ends in arbitration before a single arbitrator.  *See* Docket Item 14-3 at 11-35.  Suszek's case ultimately proceeded to arbitration, where the questions at issue were:  "Was [Suszek's] discharge for just cause, and if not, what should be the remedy?"  Docket Item 1-3 at 3 (capitalization omitted).

At the arbitration hearing, Suszek said that he had "lied about everything" when Ford investigated him.  *See* Docket Item 1-7 at 22.  Ford noted in its post-hearing brief to the arbitrator that Suszek had been "repeatedly untruthful" during the investigation and that he did not "admit[] to his actions and behaviors" until the arbitration hearing.  Docket Item 1-8 at 7.  According to Ford, Suszek's lying "sp[oke] to a complete lack of character and credibility" and was a "serious infraction."  *Id.*

In the arbitration order and award, the arbitrator acknowledged Ford's contention that Suszek's lying was a serious infraction.  *See* Docket Item 1-3 at 21.  The arbitrator also said that he had "carefully reviewed" the record as well as "the well-reasoned arguments of the advocates."  *Id.* at 26.  The arbitrator found that Ford's penalty of terminating Suszek's employment amounted to disparate treatment due to the company's lighter punishment of another employee.  *Id.* at 32.  But "back pay and

benefits would be inappropriate," the arbitrator concluded, "because of the serious nature of the harassment . . . and the harm" Suszek caused. *Id.* at 33. The arbitrator then noted that "Suszek was also untruthful during the investigation," and found that "[e]xcept for disparate treatment, discharge would be an appropriate remedy, and therefore a long suspension would be proportional under the circumstances." *Id.*

According to UAW, Ford ultimately "reinstated him on paper" but then fired him within a week for lying during the investigation that led to the August 2020 termination. Docket Item 1 at ¶¶ 20-21. Ford, on the other hand, contends that it indeed "reinstated Suszek" in accordance with the arbitration award; Ford says that the second firing was "for a new reason." Docket Item 14-1 at 7.

Four months later, UAW commenced this action, seeking an order: "confirming and enforcing the [a]rbitration [o]pinion and [a]ward"; "[e]ntering judgment in favor of . . . UAW against Ford enforcing the [a]ward including the reinstatement of . . . Suszek"; "[a]warding UAW make[-]whole relief for . . . Suszek with interest pursuant to 2[8] U.S.C. §1961(a) from February 6, 2023[,] to present for its failure and refusal to act in accordance with the [a]rbitration [o]pinion and [a]ward"; and "such other and further relief as the Court deems proper."[2] Docket Item 1 at 4-5. Ford then moved to compel arbitration, *see* Docket Item 14, as noted above.

---

[2] The complaint cites "*29* U.S.C. §[ ]1961(a)," Docket Item 1 at 5 (emphasis added), which does not appear to be a statute. Section 1961 of United States Code section *28* refers to interest on money judgment in civil cases, so the Court infers that UAW intended to cite that statute.

4

**DISCUSSION**

"[D]ispute[s] involv[ing] the assertion of rights under a collective bargaining agreement . . . [are] governed by section 301 of the LMRA." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (citing *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)). "The LMRA establishes a federal policy of promoting 'industrial stabilization through the collective bargaining agreement,' with particular emphasis on private arbitration of grievances. The Act embodies a 'clear preference for the private resolution of labor disputes without government intervention.'" *Id.* (first quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578 (1960), then quoting *Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 714 (2d Cir.1998)). A court's review of an arbitration award under the LMRA is "very limited." *See id.* (quoting *Garvey*, 532 U.S. at 509).

When reviewing arbitral awards, courts "inquire only as to whether . . . arbitrator[s] acted within the scope of [their] authority as defined by the collective bargaining agreement." *Nat'l Football League Mgmt. Council*, 820 F.3d at 536. "Actions to confirm arbitration awards . . . are straightforward proceedings in which no other claims are to be adjudicated." *Ottley v. Schwartzberg*, 819 F.2d 373, 377 (2d Cir. 1987). Courts "consider only the statutory bases for modifying or vacating an award and challenges to the award's clarity." *Id.* Confirmation is "a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007); *see also id.* (explaining

5

that a "district court confirming an arbitration award does little more than give the award the force of a court order").  Courts are "not required to consider the subsequent question of compliance."  *Id.*; *see also Dist. Council No. 9 v. APC Painting, Inc.*, 272 F. Supp. 2d 229, 239 (S.D.N.Y. 2003) ("But whether these awards have been satisfied—a fact disputed by plaintiff—has no bearing on whether the arbitration awards should be confirmed.").

In addition to the limited scope of review, there is an "extremely deferential standard of review for arbitral awards."  *Porzig v. Dresdner, Kleinwort, Benson, North Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007).  "If the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract, the award must stand."  *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 222 (2d Cir. 2002).

In the present case, UAW seeks both confirmation and enforcement.  Docket Item 1 at 5.  This Court agrees with its request for confirmation but disagrees with the request for enforcement.

The LMRA gives this Court jurisdiction "to confirm labor arbitration awards."  *Parker Meridien Hotel*, 145 F.3d at 88 (citing 29 U.S.C. § 185).  Ford argues that the parties' CBA requires an arbitrator to decide the threshold question of whether "this dispute" belongs in arbitration or in court.  Docket Item 14-1 at 16.  But insofar as Ford suggests that this applies to UAW's request for confirmation, that argument makes little sense and conflicts with this Court's power to confirm awards.  In other words, if arbitrators decide the arbitrability of requests to confirm awards, then the party opposing an award always could move for arbitration and thereby avoid a district court's ever confirming an award.  That cannot be the law.

6

Ford also contends that an arbitrator must decide whether the company "had cause to fire Suszek a second time," *id.* at 18, but it does not say why that would interfere with this Court's authority to confirm the award as to the first firing, *see generally id.* at 16-18.  This Court has the authority, and is inclined, to take the "straightforward," *Ottley*, 819 F.2d at 377, and "summary," *Zeiler*, 500 F.3d at 169, action of confirming the December 2022 opinion and award.

But UAW asks for more than mere confirmation; it also asks this Court to enforce the award, which would require the Court to determine whether the arbitrator intended to allow Ford to rehire and then almost immediately fire Suszek again on the ground that he lied during the investigation.  UAW says that Ford raised the issue of Suszek's lying in the first arbitration and that the arbitrator "fully considered" it as part of the arbitration award.  Docket Item 15 at 10.  Ford says that it fired Suszek the first time for harassment, not for lying, *see* Docket Item 14-1 at 13-15, and it disagrees that the arbitrator fully considered the lying issue, Docket Item 16 at 13.  And Ford contends that it mentioned Suszek's lying in its arbitration briefing merely to "challeng[e] Suszek's credibility, *not* [to] claim[] that his admission at the [h]earing independently justified firing him." *Id.* at 12-13.  Ford also says that it could not have relied on the lying to justify the first firing because Suszek did not admit lying until the arbitration itself.  *Id.* at 13.

This Court agrees with Ford.  Suszek's first firing was based on a charge of harassment, not lying.  See Docket Item 1-3 at 3.  And while Suszek's admission that he lied may well have influenced the arbitrator's imposition of an award—indeed, the arbitrator noted that Suszek's dishonesty made the equivalent of a long suspension

7

warranted, Docket Item 1-3 at 33—that does not mean that the arbitrator necessarily considered dishonesty as possible just cause for Suszek's firing.

The Second Circuit's decision in *BASF Wyandotte Corp.* is instructive. In that case, an arbitrator ordered a company to reinstate an employee under a CBA, but a subsequent CBA eliminated the employee's position. 774 F.2d at 46. The employee's union then asked the district court to confirm and enforce the arbitrator's award. *Id.* at 44. The court awarded back pay and reinstated the employee, but the Second Circuit reversed. *Id.* The Second Circuit "express[ed] no opinion as to whether [the employee] ha[d] a claim against [his employer] for failing to rehire him" because "[t]hat question was never addressed by the arbitrator in the arbitration hearings." *Id.* at 46. Whether this "new and separate issue" was "also arbitrable" was "for the arbitrator to decide" and "should not be litigated for the first time as part of a motion to confirm." *Id.* at 46-47. The Second Circuit explained that "unless it is beyond argument that there is no material factual difference between the new dispute and the one decided in the prior arbitration that would justify an arbitrator's reaching a different conclusion, the case must go to fresh arbitration rather than to the court for judicial enforcement." *Id.* (quoting *Derwin v. General Dynamics Corp.*, 719 F.2d 484, 491 (1st Cir.1983)); *see also United Steel Workers of Am., AFL-CIO, CLC v. Titan Tire Corp.*, 359 F. Supp. 2d 819, 830 (S.D. Iowa 2005) (explaining that because the "parties disagree[d] on the relief due under the [a]rbitration [a]ward, the request to 'enforce' the agreement bec[a]me[] a request to fashion a remedy," a task that courts are "not authorized to undertake").

8

Although a close question here, it is not "beyond argument" that the new dispute about lying during the investigation is materially and factually different from the dispute resolved in the prior arbitration—that is, whether Suszek's harassment warranted his termination. *See BASF Wyandotte Corp.*, 774 F.2d at 46 (citation omitted). To "enforce" the award as UAW requests, this Court would need to make factual findings and draw inferences about what the arbitrator determined and whether he meant his award to prevent Ford from firing Suszek on the related ground of dishonesty. *See Titan Tire Corp,* 359 F. Supp. 2d at 830 (explaining that the court could not resolve "factual issues in dispute regarding the [a]rbitration [a]ward").

What is more, and as Ford acknowledges, UAW will be free to argue before the arbitrator that this is the same dispute that was previously arbitrated, Docket Item 16 at 10, and the arbitrator may well agree with the union. So the more prudent course in this labor dispute is to let the dispute go "to fresh arbitration rather than to the court for judicial enforcement." *BASF Wyandotte Corp.*, 774 F.2d at 46 (quoting *Derwin*, 719 F.2d at 491).

The remedy that UAW requests bolsters this Court's decision to grant Ford's motion to arbitrate the issues of enforcement and remedy. As in *Titan Tire Corp.*, the parties disagree about the relief due and the request to enforce the agreement is "a request to fashion a remedy." *See* 359 F. Supp. 2d at 830. UAW asks for "make[-]whole relief . . . with interest," Docket Item 1 at 5, which would require the Court to make complicated equitable decisions. And such decisions are best suited for arbitration. *See Titan Tire Corp.*, 359 F. Supp. 2d at 830.

9

In sum, aside from the summary confirmation, UAW's enforcement claims and request for make-whole relief are issues better suited to arbitration than to this Court's intervention in the arbitration process.[3]  See BASF Wyandotte Corp., 774 F.2d at 46 (citation omitted).  Ford's motion is therefore denied in part and granted in part.

## CONCLUSION

Ford's motion to compel arbitration, Docket Item 14, is DENIED as to UAW's request to confirm the December 2, 2022, award, but is otherwise GRANTED.  Within 30 days, the parties may request a status conference with this Court to address any next steps in this forum.

SO ORDERED.

Dated:  September 30, 2025
        Buffalo, New York

/s/ Lawrence J. Vilardo
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

[3] The Court asked the parties to address whether "rather than sending [the entire case] back to arbitration," the Court could send it back to the arbitrator on the question of whether the arbitrator's "decision encompass[ed] a lying issue."  Docket Item 19 at 16.  In supplemental briefs, both sides opposed that proposal.  See Docket Item 21 at 7-8; Docket Item 22 at 5-6.  UAW contended that the arbitrator's jurisdiction ended when the arbitrator issued a final award.  See Docket Item 22 at 5.  Ford raised practical and legal concerns about the Court's proposal.  See Docket Item 21 at 7 (explaining that parties had agreed to use temporary arbitrators such as the person who decided the award at issue but that they now used a different permanent arbitrator and that it was unclear to whom the question would be directed and how that person would be retained and compensated).  After careful consideration, this Court agrees with both sides that the course it suggested would not be prudent.